**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

K&M Broadcasting, Inc d/b/a KDWA.

Debtor.

Case No. 26-31547
Chapter 11 Case, Subchapter V

# MOTION TO DEEM ACCEPTANCE OF MODIFIED PLAN

The Debtor, by and through its undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

1. The Court will hold a hearing on this motion on **Wednesday, November 25, 2026 at 9:30 a.m**. **via WebEx**, which can be accessed with the following link:

https://us-courts.webex.com/uscourts/j.php?MTID=m594b0fb9729997da1232f37f296571ef

2. Any response to the motion must be filed and served not later than **Wednesday, November 18, 2026**, which is seven (7) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT A HEARING.**

3. This Court has jurisdiction over this motion under 28. U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. This proceeding is a core proceeding. This case is now pending before this Court. This motion arises under Bankruptcy Rule 3019. This motion is filed under Bankruptcy Rule 9014 and Local Rules 9013-1 and 9013-2.

4. The Debtor filed its initial Plan on August 10, 2026 (the “Original Plan”). Following feedback from interested parties, the Debtor filed its first Modified Plan on August 17, 2026 (the “First Modified Plan”) [ECF No. 73]. The First Modified Plan was transmitted to creditors

pursuant to the applicable Federal Rules of Bankruptcy Procedure and Local Rules. Four creditors submitted ballots accepting the First Modified plan and one creditor submitted a ballot rejecting the modified plan.

5. Thereafter, the Debtor was made aware of additional tax debt owing to the IRS and MDOR that needed to be accounted for in the plan. Accordingly, the Debtor filed a Second Modified Plan on November 3, 2026 (the "Second Modified Plan") [ECF No. 89].

6. A copy of the redline showing changes between the First Modified Plan and the Second Modified Plan is attached as Exhibit A.

7. By this motion, the Debtor requests an order determining that its Second Modified Plan, does not adversely change the treatment of the claim of any creditor or interest of any equity security holder who has not accepted the modified plan in writing. The Debtor also requests that the Court deem such modification to be accepted by all creditors who have previously accepted the First Modified Plan,

8. If necessary, the Debtor may offer additional evidence in support of this Motion, including the testimony of Daniel Massman.

**WHEREFORE**, the Debtor moves the Court for an order:

A. Determining that the terms of the Second Modified Plan do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder; and

B. Holding that the modified plan is deemed accepted by all creditors and equity security holders who have previously accepted the First Modified Plan.

SIELING LAW, PLLC

Dated: November 4, 2026

By: *s/ Mary Sieling*

Mary Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN 55343
Phone: 612-325-1191
Email: mary@sielinglaw.com

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MINNESOTA**

In re:

K&M Broadcasting, Inc d/b/a KDWA.

Case No. 26-31547
Chapter 11 Case, Subchapter V

Debtor.

## MEMORANDUM OF LAW

This memorandum of law is submitted in support of the motion to deem acceptance of modified plan filed by the Debtor.

## FACTS

The factual basis for this memorandum is set forth in the motion and those allegations are incorporated herein.

## LEGAL ARGUMENT

Section 1127(a) of the Bankruptcy Code provides that the proponent of a plan may modify a plan at any point prior to confirmation. 11 U.S.C. § 1127(a). Furthermore, Bankruptcy Rule 3019 provides, in pertinent part:

> After a plan has been accepted and before the confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice . . . that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019(a).

The Court must determine whether the modifications proposed adversely change the treatment of any claim. See, e.g. *In re Mt. Vernon Plaza Community Urban Dev. Corp*. I, 79 B.R.

305, 306 (Bky. S.D. Oh. 1987). As set forth in full detail in the redlined plan, Exhibit A to this Motion, the Debtor's changes do not adversely change the treatment of the claim of any creditors or interest of any equity security holder. The changes address the accurate amount owed to the IRS and MDOR and clarify the timely of the payment of administrative fees. Such taxing authorities are not entitled to vote pursuant to the Bankruptcy Code.

**CONCLUSION**

The modifications to the plan do not adversely change the substance of the plan or the treatment of any creditor under the plan. Accordingly, the Debtor respectfully requests that an order be entered granting this motion.

SIELING LAW, PLLC

Dated: November 4, 2026

By: *s/ Mary F. Sieling*

Mary F. Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN 55343
Phone: 612-325-1191
Email: mary@sielinglaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

K&M Broadcasting, Inc d/b/a KDWA

Debtor.

Case No. 26-31547
Chapter 11 Case, Subchapter V

## ORDER DEEMING ACCEPTANCE OF MODIFIED PLAN

This case is before the court on the motion to deem acceptance of the second modified plan filed by the Debtor. Based on the record,

**IT IS ORDERED:**

1. The Second Modified Plan filed by the Debtor on November 3, 2026, does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.

2. The modified plan dated November 3, 2026 shall be deemed accepted by all creditors who have accepted first modified plan.

Dated:

Mychal A. Bruggeman
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Case No.: 26-31547 |
| K&M Broadcasting, Inc. | Chapter 11 Case (Subchapter V) |
| Debtor. | |

# ~~FIRST~~ SECOND MODIFIED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

## INTRODUCTION

K&M Broadcasting, Inc. doing business as KDWA, (the "Debtor") proposes the following Chapter 11 Plan of Reorganization for Small Business under Chapter 11 (the "Plan") pursuant to the provisions of the Bankruptcy Code.

Prior to voting to accept or reject this Plan, all creditors are encouraged to read and review the Plan in its entirety. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation, in which creditors will receive less than the projections in this Plan.

## Article 1: Defined Terms

### 1.1 Defined Terms in Bankruptcy Code.

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

### 1.2 Additional Defined Terms.

(1) "Allowed" means with respect to any claim: (a) a proof of claim or a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; or (c) a claim that is allowed in a

stipulation or settlement executed prior to or after the Effective Date; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

(2) "Bankruptcy Code" means Title 11 of the United States Code.

(3) "Bankruptcy Rule" means a Federal Rule of Bankruptcy Procedure.

(4) "Chapter 11 Case" means the Debtor's pending case under the Bankruptcy Code, identified in the caption at the top of this Plan.

(5) "Confirmation Date" means the date on which the Confirmation Order is entered.

(6) "Confirmation Order" means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(7) "Contested Claim" means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor's insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(8) "Court" means the United States Bankruptcy Court for the District of Minnesota, which properly exercises jurisdiction over the Chapter 11 Case.

(9) "Debtor" means K&M Broadcasting, Inc.

(10) "Effective Date" means the first business day following the date that is 14 days after the entry of the Confirmation Order.

(11) "IRS" means the Internal Revenue Service.

(12) "Petition Date" means May 11, 2026.

(13) "Plan" means this chapter 11 plan of reorganization as amended, revised, or modified.

**1.3 Exhibits.**

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan. The exhibits to the Plan include the following:

Exhibit A Liquidation Analysis

Exhibit B ~~Three~~Five-Year Cash Flow Projections

## Article 2: Background Information Regarding the Debtor, Liquidation Analysis and Feasibility

### 2.1 Description and History of the Debtor's Business.

The Debtor is a Minnesota corporation. Its principal place of business is 514 Vermillion Street, Hastings, MN 55033. The Debtor operates a radio station at this location. The Debtor believes that this proposed Plan ensures the long-term viability of the Debtor and its continued operations in Hastings, Minnesota.

### 2.2 Liquidation Analysis.

The Plan must provide that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. As set forth in the liquidation analysis, if the Debtor was forced to liquidate its assets in chapter 7, priority and general unsecured creditors would receive $0.00. As a liquidation will result in the Debtor ceasing operations, no future income from the Debtor will be available to pay creditors. Thus, the best recovery for unsecured creditors depends on the continued operation of the Debtor.

### 2.3 Ability to Make Future Plan Payments.

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information in **Exhibit B**. The Debtor's financial projections show that the Debtor will have sufficient revenue to make payments on the Plan. The final Plan payment is expected to be paid in December ~~2029~~2031.

## Article 3: Classification of Claims and Interests

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

The following table designates the classes of claims against the Debtor and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Expenses | No | No |
| N/A | Priority Claims | No | No |
| 1-A | Secured Claim - PayPal | No | No |

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| 1-B | Secured Claim – Vermillion State Bank | Yes | Yes |
| 1-C | Secured Claim – ODK Capital | Yes | Yes |
| 1-D | Secured Claim – GM Financial | No | No |
| 1-E | Secured Claim – Ally Bank | No | No |
| 1-F | Secured Claim – Merchants Bank | No | No |
| 2 | Unsecured Claims | Yes | Yes |
| 3 | Equity Interest Holders | No | No |

## [redacted] Article 4: Treatment of Administrative Expense Claims and Priority Tax Claims

Under section 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes and are treated as unclassified claims. Under the Plan, the unclassified claims shall receive the treatment described below:

### 4.1 Allowed Administrative Expense Claims.

~~Except as otherwise provided in this Article, holders of Allowed claims specified in section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash as soon as reasonably practical following the later of: (i) the Effective Date or (ii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.~~

~~Professional fees and expenses, including those of the Debtor's attorney and the Subchapter V trustee, incurred through the Effective Date and not previously Allowed shall be subject to Court approval~~. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses, no later than 30 days after the Effective Date. The Debtor shall pay any ~~Allowed~~ allowed professional fees and expenses (a) as follows:

Subchapter V Trustee: The estimated allowed total owed to the Subchapter V Trustee is $5,500. Such amount will be paid in 12 monthly installments of $458.33 commencing one month after the Effective Date. Thereafter, if additional fees are allowed to the Subchapter V Trustee, such fees will be paid in monthly installments of $450.00.

Sieling Law: The firm's prepetition retainer fee is exhausted. The remaining estimated allowed total owed is $4,000.00. The debtor will commence paying such amount 12 months after the Effective Date, with approximately $2,500 to be paid in 2028, and $500.00 to be paid in 2029, 2030 and 2031.

~~set forth in **Exhibit B** or (b) as agreed by the holder of such claim~~. ~~The Debtor estimates that the fees owed to its attorney Sieling Law, PLLC are $6,000.00, after Sieling Law's retainer fee is exhausted and the estimated fees owed to the Subchapter V Trustee are $5,000.00~~.

The Debtor does not believe there are any other administrative claims ~~of taxing authorities for post- petition taxes. The Debtor is current on all post-petition taxes.~~ ~~Except as otherwise provided in this Article, holders of Allowed claims specified in section 507(a)(2) of the Bankruptcy~~

~~Code,~~ If other administrative claims are allowed, they shall: (a) be paid in full in cash as soon as reasonably practical following the later of: (i) the Effective Date or (ii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

### 4.2 Priority Claims.

**Pre-petition Tax Claims**: The Minnesota Department of Revenue filed a proof of claim in the amount of $12,045.17, of which $10,707.47 is for a priority claim. ~~m claiming a priority amount of $12,975.21~~. Such priority taxes will be paid in full with interest at a rate of ~~eight~~ seven percent, payable monthly in the amount of $~~375.00~~212, commencing one month after the Effective Date ~~confirmation date~~ and continuing for ~~36~~ 60 months thereafter or until paid in full, whichever is sooner.

The IRS filed two ~~a~~ proofs claims claiming a priority amount of $~~129,586.61~~94,297.52 ~~for estimated taxes. The Debtor believes this amount will be amended to $0.00 by the Effective Date~~. Such priority taxes will be paid in full with interest at a rate of seven percent, payable monthly in the amount of $1,867.00, commencing one month after the Effective Date and continuing for 60 months thereafter or until paid in full, whichever is sooner.

The pre-petition priority tax owed by the Debtor is nondischargeable pursuant to 11 U.S.C. §§ 523(a) and 1192(2). To the extent the Minnesota Department of Revenue and the IRS claim penalties or nonpriority taxes; such portions will be treated as a Class 2, general unsecured claim.

All other Allowed claims not specifically treated in this Section and entitled to priority under section 507(a) of the Bankruptcy Code shall be paid in full in cash as soon as practicable following the later of: (a) the Effective Date, (b) the due date, or (c) the date on which such claims are Allowed.

## [redacted] Article 5: Treatment of Classified Claims and Interest

**Class 1-A: Secured Claim – PayPal Loan Builder ("PayPal")**

Class 1-A consists of the secured claim of PayPal pursuant to certain agreements, which is secured by a lien on nearly all assets of the Debtor. The total amount owed to PayPal is $16,320.00. The Debtor will pay such amount in 36 monthly installments of $453.33 commencing one month after the Effective Date. The Debtor's obligation to pay PayPal shall be secured by the existing lien and such lien shall have the same priority, dignity, and effect as the pre-petition lien. After PayPal receives the payment pursuant to this Article, PayPal shall execute a release of its liens on the Debtor's assets, including, without limitation, filing a termination of its UCC financing statement.

**Class 1-B: Secured Claim - Vermillion State Bank ("Vermillion")**

Class 1-B consists of the secured claim of Vermillion, pursuant to certain loan agreements, which are secured by a blanket lien in substantially all the Debtor's assets. As of the Petition Date, the Debtor estimates the total amount owed to Vermillion was approximately $650,000.00 ("the Vermillion Indebtedness). The Vermillion Indebtedness is also secured by a mortgage on the real estate located at 20980 Red Wing Boulevard, Hastings, Minnesota (the Massman Homestead); 1700 4th Street East, Hastings, Minnesota 55033 (the transmitter tower location); and 514 Vermillion Street, Hastings, Minnesota (the Debtor's operating location). The transmitter location and operating location are owed by M&M Real Estate Holdings, LLC ("M&M") which are said business's only assets. M&M receives no revenue from these real estate holdings. The Massmans are the owners of M&M. The Debtor is the exclusive occupant of the operating location and user of the transmitter tower. D&Z Media is a co-borrower of the Vermillion Indebtedness.

There are real estate taxes owing on 514 Vermillion Street in the estimated amount of $14,160.63. As the sole occupant of the property, the unwritten agreement is that the Debtor will pay real estate taxes owed for this location. Again, M&M receives no revenue or rent in order to pay the real estate taxes.

The Vermillion Indebtedness shall be paid with an interest rate of 6.75 percent per annum on a 15-year amortization schedule, with an 8 year ballon in December 2034. The estimated total monthly payment is $5,755.00, which will be split evenly between the debtor and D&Z Media (approximately $2,877.50 each). Additionally, the Debtor will pay $500.00 toward the property tax arrears beginning one month after the effective date and such payments will increase to $800 seven months after the effective date. The Debtor will pay ongoing real estate taxes that come due during the Plan.

The Debtor's obligation to pay Vermillion under the Plan shall be secured by the existing liens and mortgages of Vermillion pursuant to all existing agreements between Vermillion and the Debtor. Vermillion's lien and mortgages shall have the same priority, dignity, and effect as the pre-petition liens of Vermillion.

On or as soon as reasonably practicable after the Effective Date, the Debtor and Vermillion may amend and restate any agreements between the parties to reflect the terms of this Plan to the extent that the Debtor and Vermillion agree that such formal amendment is required. Except as provided in the Plan, the terms of the existing agreements between Vermillion and the Debtor shall remain in full force and effect.

The payments to Vermillion shall be in exchange for, and in full satisfaction, settlement, release, and discharge of the Vermillion Indebtedness. After Vermillion receives the payment pursuant to this Article, Vermillion shall execute a release of liens on the Debtor's assets and other collateral, including, without limitation, a UCC Termination Filing, a mortgage satisfaction, and any other document reasonably necessary to reflect the full satisfaction, settlement, release, and discharge of the Allowed Class 1-B claim.

**Class 1-C: Secured Claim – ODK Captial:**

Class 1-C consists of the secured claim of ODK pursuant to certain loan agreements, which are secured by a blanket lien in substantially all of the Debtor's assets. The Debtor does not believe

there is a remaining balance owed to ODK. In any case, after deducting the amount of the obligation owed by the Debtor to Vermillion, the Debtor estimates $0.00 in available equity securing the obligations owed by the Debtor to ODK. The Class 1-C claim shall be deemed allowed in the amount of $0.00. It shall be treated as a general unsecured claim in Class 2, which is further described below. Any obligation of the to pay the holder of Claim 1-B under the Plan shall be secured by the existing liens of such holder, which shall be released upon payment pursuant to this Plan.

**Class 1-D: Secured Claim – GM Financial**

Class 1-C consists of the secured claim of AmeriCredit Financial Services, Inc, doing business as GM Financial, secured by a lien on the Debtor's 2022 Chevrolet Bolt. GM Financial filed a proof of claim for a secured debt of $10,972.82, plus interest at a rate of 2.49%. The Debtor will continue to timely pay GM Financial $529.23 per month pursuant to the agreement until the secured claim, with interest, is paid in full. GM Financial shall retain its lien on the vehicle with the same priority, dignity, and effect as its pre-petition lien until the secured claim is fully paid. After GM Financial receives the payment pursuant to this Article, it shall execute a release of its lien.

**Class 1-E: Secured Claim – Ally Bank**

Class 1-C consists of the secured claim of Ally Bank, secured by a lien on the Debtor's Ford F350. Ally filed a proof of claim for a secured debt of $15.64. The Debtor believes that Ally was paid in full when this vehicle loan was refinanced with Merchants Bank. However, given the low amount owed, the Debtor will pay Ally Bank $15.64 on the Effective Date.

**Class 1-F: Secured Claim – Merchants Bank**

Class 1-E consists of the secured claim of Merchants Bank, secured by a lien on the Debtor's Ford F350. The Debtor will continue to timely pay Merchants Bank pursuant to the agreement until the secured claim, with interest, is paid in full. The estimated balance owing to Merchants is $34,936.00 and monthly payments are $950. Merchants shall retain its lien on the vehicle with the same priority, dignity, and effect as its pre-petition lien until the secured claim is fully paid. After Merchants receives the payment pursuant to this Article, it shall execute a release of its lien.

**Class 2: General Unsecured Claims**

Class 2 consists of all Allowed unsecured claims against the Debtor that are not entitled to priority and are not classified elsewhere in this Plan. Pursuant to the Bankruptcy schedules and the filed proofs of claim, the Debtor believes the general unsecured claims total approximately $33,400.

Holders of Allowed Class 2 claims shall receive their pro rata share of $10,000, which will be paid as follows: $5,000 to be disbursed in December 2028 and $5,000 to be disbursed in 2029.

Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy

Code or otherwise applicable law. The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

**<u>Class 3: Equity Interest Holders.</u>**

Equity Interest Holders are people who hold an ownership interest in the Debtor. The members of Class 3 are Daniel Massman, owning 55% and Barbara Massman, owning 45%. The Massmans shall retain their equity interest in the Debtor.

## Article 6: Distributions and Claims Administration

### 6.1 Payments under the Plan.

Payments under this Plan shall be made by check (mailed with first class postage pre-paid), ACH, or wire transfer to the holder of each Allowed claim. If made by check, payments shall be mailed to the claim holder at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules as of the Confirmation Date. Holders of Allowed claims as of the Confirmation Date may contact the Reorganized Debtor to amend their addresses or bank account information at:

K&M Broadcasting.
Attn: Daniel Massman
514 Vermillion St
Hastings, MN 55033

### 6.2 Delay of Distribution on Contested Claims.

No distribution will be made on account of a Contested Claim unless such claim is Allowed by a final non-appealable order.

## Article 7: Executory Contracts and Unexpired Leases

### 7.1 Acceptance and Rejection of Contracts and Leases.

The Debtor's contract with Big Deals Media shall be assumed as of the Effective Date. There are no known arrears owed to Big Deals Media. All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts, unexpired leases, and other agreements.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent notice or order, claims arising out of the rejection of an executory contracts or unexpired lease

pursuant to this Article of the Plan must be filed with the Court within 30 days after the entry of the Confirmation Order and, upon allowance, shall be paid as a general unsecured creditor.

## Article 8: Implementation and Effect of Confirmation of the Plan

### 8.1 Title to and Vesting of Assets.

~~All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date,~~ T~~t~~o the ~~full~~ extent authorized by section 1141(b) of the Bankruptcy Code, as modified by Section 1181, all property of the Debtor and the estate vests in the Reorganized Debtor and such property is free and clear of all liens, encumbrances, claims, and interests of creditors, including any notices of *lis pendens*, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.

### 8.2 Preservation and Settlement of Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively, the "Retained Actions"). The Debtor does not believe there are any viable actions at this time; however, should the Debtor recover any sums of money on a cause of action under the bankruptcy code, such funds will be disbursed pro-rata to unsecured creditors.

### 8.3 Management and Officer Salary

From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan. From and after the Effective Date, the Reorganized Debtor shall continue to be managed as it was prior to and during the Chapter 11 Case – Daniel Massman and Barbara Massman will maintain their positions with the Debtor and keep their salary arrangement, subject to periodic cost of living adjustments. The Debtor will not pay the Massmans for any other claims they might have against the Debtor until all payments have been made as set forth in this plan.

### 8.4 Discharge.

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from all claims that arose before confirmation of this Plan, except that the Debtor will not be discharged of any debt:

(a) imposed by this Plan; or

(b) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any claim provided for in this Plan until the Court grants a discharge on completion of all payments due within the three years of this Plan, or otherwise provided in section 1192 of the Bankruptcy Code.

A discharge under this Plan discharges, waives, and releases the Debtor from any debt or claim that arose before the Effective Date and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a proof of claim was filed or deemed filed under section 501 of the Bankruptcy Code; (b) such claim is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.

**8.3. Distribution of Plan Payments.**

If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

## Article 9: General Provisions

**9.1 Default.**

Nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code. If the Debtor fails to timely make a payment due under Plan, the relevant party may send a written notice of default to the Debtor.

Unless the Plan expressly provides otherwise, if the Debtor fails to cure within 30 business days of such notice from a creditor, the relevant creditor shall be entitled to file a motion to obtain stay relief with respect to any collateral subject to its liens. All unsecured creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

**9.2 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.3 Binding Effect.**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**9.4 Controlling Effect.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

IN WITNESS WHEREOF, the undersigned have executed this Plan of Reorganization for Small Business under Chapter 11 as of ~~August 17~~November 3, 2026.

K&M Broadcasting, Inc

*s/ Daniel Massman*
By: Daniel Massman
Its: President

SIELING LAW, PLLC

By: *s/ Mary F. Sieling*
Mary F. Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN 55343
Phone: 612-325-1191 Email: mary@sielinglaw.com

Attorney for the Debtor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:
K&M Broadcasting, Inc

CASE NO: 26-31547

**DECLARATION OF MAILING CERTIFICATE OF SERVICE**

Chapter: 11

On 11/4/2026, I did cause a copy of the following documents, described below,

Motion to Deem Acceptance of Modified Plan and Exhibit A

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 11/4/2026

/s/ Mary Sieling
Mary Sieling 0389893

Sieling Law, PLLC
12800 Whitewater Dr
Minnetonka, MN 55343
612-325-1191
mary@sielinglaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:

K&M Broadcasting, Inc

CASE NO: 26-31547

**CERTIFICATE OF SERVICE**
**DECLARATION OF MAILING**

Chapter: 11

On 11/4/2026, a copy of the following documents, described below,

Motion to Deem Acceptance of Modified Plan and Exhibit A

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 11/4/2026

Victoria Blake
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Mary Sieling
Sieling Law, PLLC
12800 Whitewater Dr
Minnetonka, MN 55343

**(The following pages contain parties served via First Class USPS Mail Service unless stated otherwise.)**

CASE INFO

LABEL MATRIX FOR LOCAL NOTICING
NCRS ADDRESS DOWNLOAD
CASE 26-31547
DISTRICT OF MINNESOTA
WED NOV 4 8-8-37 PST 2026

DEBTOR

K M BROADCASTING INC DBA KDWA
514 VERMILLION ST
HASTINGS MN 55033-1941

~~EXCLUDE~~

~~SIELING LAW PLLC~~
~~12800 WHITEWATER DR~~
~~STE 100 3201~~
~~MINNETONKA MN 55343-9347~~

UNITED STATES OF AMERICA INTERNAL REVENUE S
CO ADINE S MOMOH
600 US COURTHOUSE
300 SOUTH 4TH STREET
MINNEAPOLIS MN 55415-1320

VERMILLION STATE BANK
WILFORD GESKE COOK PA
7616 CURRELL BLVD STE 200
WOODBURY MN 55125-2296

~~EXCLUDE~~

~~ST PAUL~~
~~200 WARREN E BURGER FEDERAL BUILDING~~
~~AND US COURTHOUSE~~
~~316 N ROBERT ST~~
~~ST PAUL MN 55101-1495~~

ALLY BANK CO AIS PORTFOLIO SERVICES LLC
4515 N SANTA FE AVE DEPT APS
OKLAHOMA CITY OK 73118-7901

AMERICREDIT FINANCIAL SERVICES INC DBA GM
P O BOX 183853
ARLINGTON TX 76096-3853

AMERICAN EXPRESS
ATTN OFFICER
200 VESEY ST
NEW YORK NY 10285-0002

AMERICAN EXPRESS NATIONAL BANK
CO BECKET AND LEE LLP
PO BOX 3001
MALVERN PA 19355-0701

BIG DEALS MEDIA
ATTN OFFICER
7650 EXECUTIVE DR
EDEN PRAIRIE MN 55344-3677

BIG DEALS MEDIA
ATTN OFFICER
8925 AZTEC DR
EDEN PRAIRIE MN 55347-1955

BOTTOM LINE CONCEPT LLC
ATTN OFFICER
3323 NE 163 ST STE 302
NORTH MIAMI BEACH FL 33160-5596

CAN CAPITAL INC
ATTN OFFICER
1850 PARKWAY PLACE 1150
MARIETTA GA 30067-4439

COMCAST CABLE COMMUNICATIONS
ATTN OFFICER
1701 JOHN F KENNEDY BLVD
PHILADELPHIA PA 19103-2838

DANIEL MASSMAN
20980 RED WING BLVD
55033-9004

(P)DELL FINANCIAL SERVICES
P O BOX 81577
AUSTIN TX 78708-1577

DELL FINANCIAL SERVICES LLC
STREUSAND LANDON OZBURN LEMMON LLP
1801 S MOPAX EXPRESSWAY SUITE 320
AUSTIN TX 78746-9817

GMAC FINANCING
ATTN OFFICER
PO BOX 183593
ARLINGTON TX 76096-3593

GLOBAL MUSIC RIGHTS LLC
ATTN OFFICER
1801 W OLYMPIC BLVD
PASADENA CA 91199-0001

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATION
PO BOX 7346
PHILADELPHIA PA 19101-7346

MERCHANTS BANK
ATTN OFFICER
100 E 3RD ST 106
WINONA MN 55987

MINNESOTA REVENUE
ATTN COLLECTIONS DIVISION
600 N ROBERT ST
SAINT PAUL MN 55146-0010

ODK CAPITAL LLC
4700 W DAYBREAK PKWY STE 200
SOUTH JORDAN UT 84009-5133

ODK CAPITAL LLC
ATTN OFFICER OR MANAGING AGENT
4700 W DAYBREAK PKWY 200
SOUTH JORDAN UT 84009-5133

PAYPAL LOAN BUILDER
ATTN OFFICER
2211 N 1ST ST
SAN JOSE CA 95131-2021

RAPID FINANCE
ATTN OFFICER
4500 EAST WEST HIGHWAY 6TH FL
BETHESDA MD 20814-3327

~~EXCLUDE~~

~~US TRUSTEE~~
~~1015 US COURTHOUSE~~
~~300 S 4TH ST~~
~~MINNEAPOLIS MN 55415-3070~~

VERMILLION BANK
ATTN OFFICER
170 E MAIN ST
PO BOX 28
VERMILLION MN 55085-0028

VERMILLION STATE BANK
107 E MAIN STREET
VERMILLION MN 55085

WELLS FARGO BANK
ATTN OFFICER
420 MONTGOMERY ST
SAN FRANCISCO CA 94104-1298

WELLS FARGO BANK NA
PO BOX 10438 MAC F823502F
DES MOINES IA 50306-0438

~~EXCLUDE~~

~~MARY SIELING~~
~~SIELING LAW PLLC~~
~~SIELING LAW PLLC~~
~~12800 WHITEWATER DR~~
~~STE 100 3201~~
~~MINNETONKA MN 55343-9347~~

STEVEN B NOSEK
STEVEN B NOSEK PA
10285 YELLOW CIRCLE DRIVE
HOPKINS MN 55343-9142